**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Shane Sipe,<br><br>                Plaintiff,<br><br>    v.<br><br>Music Tribe Commercial NV, Inc.,<br><br>                Defendant. | Case No. 2:20-cv-00299-JCM-BNW<br><br>**Report & Recommendation re [43]** |

Before the Court is a motion by former plaintiff's counsel, Trevor Hatfield of Hatfield & Associates, Ltd., to adjudicate his attorney's lien. ECF No. 43.[1] Plaintiff Shane Sipe opposes the motion because, he argues, the motion is premature, given that judgment has not been entered in this case. ECF No. 46. For the reasons explained below, the Court will recommend that Hatfield's motion be granted and that he be awarded his claimed fees and costs.

**I.     Background**

Hatfield initiated this matter in February 2020 with a complaint filed on behalf of plaintiff Shane Sipe. ECF No. 1. Hatfield moved to withdraw in January 2021, shortly after discovery had closed. ECF No. 27. The Court granted Hatfield's motion later that month. ECF No. 29.

Shortly after Hatfield filed his motion to withdraw, he likewise filed a notice of attorney's lien. ECF No. 28. The lien is signed by Sipe and claims the "agreed upon" figures of $1,523.79 in court costs and deposition transcripts, and $12,000.00 in attorney's fees. *Id.* Hatfield filed the underlying motion to reduce this lien to judgment on May 7, 2021. ECF No. 43. Sipe responded, and Hatfield replied. ECF Nos. 46 & 47.

**II.    Magistrate Judge's Authority**

Before turning to the substance of the pending motion, the Court first evaluates its authority to decide the matter. The authority of the undersigned magistrate judge is derived from

---

[1] This motion has been referred to the undersigned magistrate judge for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).

28 U.S.C. § 636, which generally provides magistrate judges with the authority to "hear and determine" non-dispositive matters. *See* 28 U.S.C. § 636(b)(1)(A); *see also S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1259 (9th Cir. 2013). By contrast, dispositive matters are sometimes referred to magistrate judges, but in those circumstances a magistrate judge submits a recommendation to the assigned district judge; that recommendation is subject to the district judge's de novo review. *See* 28 U.S.C. § 636(b)(1)(B); *see also CMKM Diamonds*, 729 F.3d at 1259-60. Section 636 specifically enumerates eight different types of matters to be treated as "dispositive." *See* 28 U.S.C. § 636(b)(1)(A)-(B). When a matter falls outside of those expressly enumerated as dispositive, the Ninth Circuit has adopted a functional approach of looking to the nature and effect of the issued ruling to determine whether the underlying matter should be considered dispositive or non-dispositive. *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015).

This matter involves a determination of a request to adjudicate an attorney's lien, which in turn requires a determination of the fees owed to an attorney and then entry of judgment in that amount. Such a motion is not one of the motions enumerated in § 636 as being dispositive, so the undersigned will evaluate its nature and effect to determine whether its resolution is within a magistrate judge's authority. As a general matter, magistrate judges have the authority to decide a request for attorneys' fees arising out of a distinct pretrial event, such as attorneys' fees arising out of a discovery dispute. *See Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991). On the other hand, case-wide attorneys' fees determined in relation to entry of judgment must be treated as a dispositive matter beyond a magistrate judge's authority. *See* Fed. R. Civ. P. 54(d)(2)(D). As a result, this court will treat the motion as being dispositive in nature and will issue a report and recommendation to the assigned district judge.

**III.   The parties' arguments**

Hatfield argues that he is entitled to an order reducing his lien to judgment under NRS 18.015(6). ECF No. 43 at 2.  He claims that he attempted to obtain payment for his lien, but Sipe did not contact Hatfield or pay the lien amount. *Id.*

In response, Sipe does not contest that he agreed to pay the fees claimed by Hatfield or that the claimed fees are unreasonable. *See* ECF No. 46.  Instead, Sipe argues that the Court

1 should deny Hatfield's motion because it is procedurally defective. *Id.* at 4. Sipe claims that, under Nevada Supreme Court caselaw, Hatfield's motion is premature and unenforceable until judgment is entered in Sipe's favor. *Id.* Sipe further claims that Hatfield has not complied with NRS 18.015's notice provision. *Id.* Specifically, Sipe's counsel concedes that Hatfield sent a copy of the underlying motion to Sipe's home and email address, but—according to Sipe—this is supposedly insufficient because Sipe is "unlikely to even be aware of the instant motion," given that he "had some troubles that caused him to be detained and unable to be contacted directly." *Id.*

**IV.   Analysis**

The Court has ancillary jurisdiction over fee disputes generated by an attorney's withdrawal. *See, e.g.*, *Federal Sav. & Loan Ins. Corp. v/ Ferrante*, 364 F.3d 1037, 1041, 731 (9th Cir. 2004) ("Determining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction."). The state's law in which a federal court sits governs resolution of an attorney's lien. *Guerrero v. Wharton*, 2019 WL 2814662, at *2 (D. Nev. June 17, 2019). This Court sits in the state of Nevada, so Nevada law applies.

**A.   Sufficient notice**

As a preliminary matter, the Court rejects Sipe's contention that Hatfield failed to comply with NRS 18.015's notice provision. The notice provision provides: "[o]n motion filed by an attorney having a lien under" NRS 18.015, the court shall adjudicate the rights of the lienholder "after 5 days' notice to all interested parties." NRS 18.015(6). The Federal Rules of Civil Procedure, in turn, state that "[i]f a party is represented by an attorney," service of documents "must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1). Service is accomplished if a litigant sends a document "to a registered user by filing it with the court's electronic-filing system." Fed. R. Civ. P. 5(b)(2)(E). The Nevada Rules of Civil Procedure similarly provide that "[i]f a party is represented by an attorney," then service of "a written motion" "must be made on the attorney." Nev. R. Civ. P. 5(a)(1)(D), (b)(1).

Here, Hatfield has complied with NRS 18.015's notice provision. Sipe is represented by counsel, and the record reflects that counsel received the motion via the Court's CM/ECF system.

ECF No. 43. More than 5 days have elapsed since counsel received the motion. *Id.* Thus, Hatfield has complied with the notice provision, and the motion is ripe for adjudication.

**B. Entitlement to relief**

Section 18.015 of the NRS provides for two kinds of liens. *Fed. Nat'l Mortg. Ass'n v. Villagio Comm. Ass'n*, 2018 WL 6059512, at *2 (D. Nev. Oct. 30, 2019).[2] Each lien "is for the amount of any fee which has been agreed upon by the attorney and client." NRS 18.015(2). In the absence of agreement, however, the lien "is for a reasonable fee for the services which the attorney has rendered for the client." *Id.*

The first kind of lien is a "charging lien" under § 18.015(1)(a). This lien is upon "any claim, demand[,] or cause of action," which the client placed in the attorney's hands "for suit or collection, or upon which a suit or other action has been instituted." NRS 18.015(1)(a). A charging lien under this subsection "attaches to any verdict, judgment[,] or decree entered and to

---

[2] Specifically, NRS 18.015 provides:
   1. An attorney at law shall have a lien:
     (a) Upon any claim, demand or cause of action, including any claim for unliquidated damages, which has been placed in the attorney's hands by a client for suit or collection, or upon which a suit or other action has been instituted.
     (b) In any civil action, upon any file or other property properly left in the possession of the attorney by a client.
   2. A lien pursuant to subsection 1 is for the amount of any fee which has been agreed upon by the attorney and client. In the absence of an agreement, the lien is for a reasonable fee for the services which the attorney has rendered for the client.
   3. An attorney perfects a lien described in subsection 1 by serving notice in writing, in person or by certified mail, return receipt requested, upon his or her client and, if applicable, upon the party against whom the client has a cause of action, claiming the lien and stating the amount of the lien.
   4. A lien pursuant to:
     (a) Paragraph (a) of subsection 1 attaches to any verdict, judgment or decree entered and to any money or property which is recovered on account of the suit or other action; and
     (b) Paragraph (b) of subsection 1 attaches to any file or other property properly left in the possession of the attorney by his or her client, including, without limitation, copies of the attorney's file if the original documents received from the client have been returned to the client, and authorizes the attorney to retain any such file or property until such time as an adjudication is made pursuant to subsection 6,
from the time of service of the notices required by this section.
   5. A lien pursuant to paragraph (b) of subsection 1 must not be construed as inconsistent with the attorney's professional responsibilities to the client.
   6. On motion filed by an attorney having a lien under this section, the attorney's client or any party who has been served with notice of the lien, the court shall, after 5 days' notice to all interested parties, adjudicate the rights of the attorney, client or other parties and enforce the lien.
   7. Collection of attorney's fees by a lien under this section may be utilized with, after or independently of any other method of collection.
NRS 18.015.

any money or property which is recovered on account of the suit or other action." NRS 18.015(4)(a).  Thus, a charging lien requires an affirmative money recovery. *Fed. Nat'l Mortg. Ass'n*, 2018 WL 6059512, at *2.

The second kind of lien is a "retaining lien" under § 18.015(1)(b). *Id.*  A retaining lien is "upon any file or other property" that the client left in their attorney's possession, including "copies of the attorney's file if the original documents received from the client have been returned to the client." NRS 18.015(1)(b).  Unlike a charging lien, a retaining lien does not require a verdict, judgment, decree, or affirmative money recovery. *Nationstar Mort., LLC v. Desert Shores Comm. Ass'n*, 2017 WL 1788682, at *2 (D. Nev. Jan. 13, 2017).  Instead, it "depends only on possession of the client's file or other property, . . . and 'applies to a general balance for all professional services performed.'" *Id.* (citing NRS 18.015(4)(b)).  If a retaining lien attaches, then the statute authorizes the attorney to retain a client's property until the lien is adjudicated under NRS 18.015(6). NRS 18.015(4)(b).

Here, Hatfield represented Sipe in a matter currently pending before the Court.  Judgment has not been entered.  Therefore, Hatfield cannot have charging lien under § 18.015(1)(a).

That said, Hatfield provided legal services to Sipe for which Sipe has not paid him. Sipe does not contest that. Hatfield therefore holds a retaining lien under NRS 18.015(1)(b) against the files that Sipe left in his possession, provided the lien has been perfected.

**C.  Perfected lien**

To perfect either of the liens set forth in NRS 18.015(1), an attorney must serve notice of the lien upon their client "in writing, in person or by certified mail, return receipt requested." NRS 18.015(3); *accord Fredianelli v. Fine Carman Price*, 402 P.3d 1254, 1256 (Nev. 2017).  The notice must "claim[]" the lien and state its amount. NRS 18.015(3).

Here, Hatfield has perfected his retaining lien.  The record reflects that Sipe accepted personal service of a document titled "attorney's lien." ECF No. 28.  The document claims a lien "pursuant to the provisions of . . . NRS 18.015." *Id.* at 1–2.  The document reflects that the lien is for $1,523.79 in advanced court costs and deposition transcript fees, and $12,000 in attorney's fees. *Id.* at 1.  Thus, the lien is perfected because it was properly served upon Sipe and contains

the amount claimed. Accordingly, the undersigned will recommend that Hatfield's lien be reduced to judgment.

**D. Reasonableness of fees and hours worked**

As stated, Hatfield claims a lien for $13,523.79.[3] The agreed-upon fee "controls the amount of the lien," but "[the] court determines the reasonableness of the award." *Fed. Nat'l Mortg. Ass'n v. Villagio Comm. Ass'n*, 2018 WL 6059512, at *2 (D. Nev. Oct. 30, 2018). Sipe failed to contest Hatfield's hourly rate or the amount of work performed. However, the Court has an independent duty to make findings to support an award of fees.[4]

The Supreme Court of Nevada has identified four factors to consider when determining attorneys' fees: (1) the qualities of the advocate, including their training, education, experience, professional standing, and skill; (2) the character of the work to be done, including its difficulty, intricacy, importance, the time and skill required, the responsibility imposed, and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer, including the skill, time, and attention given to the work; and (4) the result, including whether the attorney was successful and the benefits derived. *Brunzell v. Golden Gate Nat. Bank*, 455 P.2d 31, 33 (Nev. 1969). Notably, the absence of an hourly schedule of time expended on tasks is not fatal to a request for attorneys' fees. *Id.* Instead, courts must use the four *Brunzell* factors to establish the value of counsel's services. *Id.* No one factor "should predominate or be given undue weight." *Id.*

Beginning with the first factor, counsel has practiced law in Nevada for over 20 years. ECF No. 47 at 7. His experience includes many jury trials, bench trials, and arbitrations. *Id.*

---

[3] In his briefing, Hatfield instead claims a lien for $13,529.29. ECF No. 47 at 8. The difference is small, but the Court will use the $13,523.79 figure because that is the amount claimed in the lien served upon Sipe. ECF No. 28.

[4] *See Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish*, 216 P.3d 779, 788 n.2 (Nev. 2009), *superseded by statute on other grounds as stated in Fredianelli v. Fine Carman Price*, 402 P.3d 1254, 1255–56 (2017) ("Even when district courts have jurisdiction to resolve fee disputes, courts must still make findings of reasonableness on awards of attorney fees"); *Guerrero v. Wharton*, 2019 WL 2814662, at *4 (D. Nev. June 17, 2019) ("Defendant does not challenge the rates of [counsel], but [the court] will nonetheless review the reasonableness of the rates claimed."); *see also* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, *except a motion . . . for attorney's fees*, constitutes a consent to the granting of the motion.") (emphasis added); LR 54-14(d) (explaining that if a motion for attorneys' fees is unopposed, "the court may grant the motion after independent review of the record.").

Turning to the second factor, Hatfield describes this case as prolix federal employment law. *Id.* In the complaint, Sipe alleges that defendants failed to pay him overtime, give notice of plaintiff's right to participate in a COBRA insurance plan, remit plaintiff's personnel file upon demand, and timely pay plaintiff his earned and unpaid wages following discharge. ECF No. 5 at 3–4. Plus, the complaint contains class allegations for a class of "more than 50" members. *Id.* at 5. In total, plaintiff asserts four claims, including under the Fair Labor Standards Act and various provisions of Nevada law.

The Court finds that although FLSA claims can prove difficult, the claims alleged in plaintiff's complaint are straightforward. Further, the allegations themselves are not extensive or complex. That said, a class of 50 persons does certainly increase the difficulty of the work and its importance, particularly given that FLSA class actions sometimes require plaintiff to move for preliminary certification of the class before moving on to final certification. 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.); *see also Campbell v. Cty. of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).

Regarding the third factor (i.e., the work actually performed): Hatfield asserts that the work was extensive. Hatfield claims to have drafted the complaint, propounded and responded to written discovery, drafted an opposition to defendant's motion to dismiss, drafted plaintiff's motion to dismiss defendant's counterclaim, and prepared plaintiff for (and defended) a nearly 7-hour deposition.

As stated, the Court finds that the complaint and its allegations are not particularly complex. Further, although Hatfield states that he drafted an opposition to defendant's motion to dismiss, the Court sees no such motion to dismiss (or opposition by Hatfield) on the record. The Court was initially inclined to recommend a significant reduction to Hatfield's claimed fees because of the phantom response and because Hatfield failed to offer any explanation of the character or quantity of discovery propounded and responded to. However, the Court will not recommend a reduction because, in Hatfield's supplement, he gave a reasonable estimate of hours performed on individual tasks. The total estimate is 47.5 hours, and the phantom response is not included in the hourly schedule.

Finally, turning to the fourth factor, Sipe emphasizes that Hatfield failed to obtain any relief for his client. ECF No. 46 at 4. That is true, but only because of the procedural posture of this case, not because of any action or inaction by Hatfield. Further, Hatfield did manage this case through discovery, including a 7-hour deposition.

Having analyzed the *Brunzell* factors, the Court now assesses Hatfield's asserted fees and costs. Beginning with costs, Hatfield asserts that he advanced $1,523.79 in court costs and deposition transcript fees. The Court was inclined to award Hatfield only $400 in costs, since that was the only cost the Court could discern from the record, and Hatfield offered no breakdown of costs in his motion or reply. But in his supplement, Hatfield offers the following breakdown: $400.00 federal filing fee; $48.00 for service of process; two invoices for the transcript of plaintiff's deposition, one for $336.00 and one for $737.95 (there were two invoices as the first reporter could not finish the deposition, so another took over); and $7.34 in copy costs and postage. ECF No. 49 at 6.

The total costs according to this breakdown are $1,529.29. Sipe had an opportunity to contest the reasonableness of these costs, but he chose not to. ECF No. 48. However, in the lien that Hatfield served upon Sipe, Hatfield only claimed costs in the amount of $1,523.79, so this is the maximum figure the Court will recommend. Further, the Court finds that this figure is reasonable under *Brunzell*.

Regarding Hatfield's hourly rate, Hatfield asserts in his briefing that Sipe agreed to pay Hatfield $300 per hour if the attorney-client relationship was terminated. ECF No. 47 at 6. The Court in its discretion finds that this hourly rate is reasonable under *Brunzell*.[5]

---

[5] The Court a few weeks ago issued a minute order informing Hatfield that he failed to include evidence—including affidavits—of the prevailing market rate in the community "for similar work performed by attorneys of comparable skill, experience, and reputation." ECF No. 48 (citing *Chalmers v. Cty. of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)). The Court gave Hatfield a deadline to file a supplemental brief on this discrete issue, and it allotted Sipe a deadline to respond. *Id.* Hatfield filed his brief and argued that *Chalmers* is inapposite because it was decided in the context of a civil rights case, rather than under Nevada law. ECF No. 49 at 2. Hatfield likewise argued that courts have resolved fee disputes under the Nevada statute at issue here without requiring the use of affidavits to establish prevailing market rates. *Id.* at 3 (citing *Fannie Mae v. Villagio Cmty. Ass'n*, 2018 U.S. Dist. LEXIS 196942, at *5–6 (D. Nev. Oct. 30, 2018)). The Court agrees. *See Perrigo v. Premium Asset Srvcs.*, 2015 WL 4597569, at *10 (D. Nev. July 28, 2015) ("Although the *Brunzell* analysis is similar to the *Kerr* factors described in [LR] 54-16, they are not the same. For example, *Brunzell* does not analyze the prevailing hourly rate in the local community. However, the choice of a relevant community and the prevailing rate in that community are crucial to establishing the amount of attorney's fees granted under *Kerr*."). The nonmovant did not respond to the movant's supplemental brief.

Next, the Court turns to the amount of hours worked. Hatfield claims he worked at least 40. Hatfield did not attach to his motion or reply any statements showing the amount of work performed on any task. However, as Hatfield points out, the *Brunzell* court made clear that the absence of "hourly time schedules" is not necessary to support an award of fees. Instead, an award of fees can be supported using the aforementioned *Brunzell* factors. Further, in his supplement, Hatfield offers an hourly schedule of work performed on individual tasks. Based on the Court's review of the record, the Court believes that 40 hours is reasonable under *Brunzell*.

In sum, the Court will recommend that, under *Brunzell*, Mr. Hatfield be awarded for 40 hours of work at a rate of $300, for a total of $12,000 in attorneys' fees. Further, the Court will recommend that Hatfield be awarded $1,523.79 in court costs.

**V. Conclusion**

**IT IS THEREFORE RECOMMENDED** that the motion to adjudicate lien be GRANTED. Hatfield should be awarded fees in the amount of $12,000 and costs in the amount of $1,523.79.

**NOTICE**

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: June 30, 2021.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE